UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NAVY FEDERAL CREDIT UNION, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:18-cv-1424 (AJT/TCB) |
| LTD FINANCIAL SERVICES, L.P, *et al.*, | ) |
| Defendants. | ) |

**REPORT & RECOMMENDATION**

THIS MATTER comes before the Court on Navy Federal Credit Union's ("Plaintiff") Motion for Rule 11 Sanctions Against Defendant Advantage Assets II, Inc. ("AAII") (Dkt. 167).[1] Plaintiff seeks a court order sanctioning AAII for pressing, what Plaintiff describes as, frivolous counterclaims. On March 18, 2019, the Court dismissed this action without prejudice for lack of subject matter jurisdiction. (Dkt. 161.) For the following reasons, the undersigned recommends that Plaintiff's Motion (Dkt. 167) be DENIED.[2]

I. INTRODUCTION

On November 16, 2018, Plaintiff commenced this action against several defendants, including AAII. On March 18, 2019, after the entrance of multiple stays and extensive briefing on

---

1. Relevant filings before the Court include the Complaint (Dkt. 1) ("Compl."); First Amended Complaint (Dkt. 52) ("Am. Compl."); Plaintiff's Motion for Rule 11 Sanctions Against Defendant Advantage Assets II, Inc. (Dkt. 167) ("Pl.'s Mot."); Plaintiff's Memorandum of Law in Support of its Motion for Rule 11 Sanctions Against Defendant Advantage Assets II, Inc. (Dkt. 168) ("Pl.'s Mem. Supp."); AAII's Opposition to Rule 11 Motion (Dkt. 177) ("AAII's Opp'n"); Plaintiff's Reply in Support of its Rule 11 Motion (Dkt. 178) ("Pl.'s Reply"); Plaintiff's Notice of Additional Information Supporting Plaintiff's Rule 11 Motion (Dkt. 179) ("Pl.'s Notice"); and all attachments and exhibits submitted with those filings.

2. Out of an abundance of caution, the undersigned prepares and issues this Report and Recommendation rather than a Memorandum Opinion and Order. *See, e.g., Guerrero v. Weeks*, No. 1:13cv837 (JCC/JFA), 2014 WL 793523, at *3 n.1 (E.D. Va. Feb. 26, 2014).

various motions to dismiss, the Court dismissed this action without prejudice for lack of subject matter jurisdiction. Ten days later, Plaintiff moved for Rule 11 sanctions against AAII.

## II. STATEMENT OF FACTS

Upon a review of the pleadings and docket, the undersigned makes the following findings of fact.

On November 16, 2018, Plaintiff initiated this lawsuit against several defendants, including AAII. (Compl. ¶¶ 6-9.) Most of the counts alleged in the Complaint involved violations or breaches of the Consumer Loan Purchase and Sale Agreement ("CLPSA") by AAII and the other defendants. (*Id.* ¶¶ 1-3, 24-52.) On December 12, 2018, Plaintiff filed its First Amended Complaint under seal and filed a public version on December 17, 2018. (Dkts. 46, 52.) On December 18, 2018, Defendant Debt Management Partners, LLC ("DMB") filed its Second Motion to Dismiss of Lack of Personal and Subject Matter Jurisdiction (Dkt. 55). On December 20, 2018, LTD Financial Services, L.P. ("LTD") and AAII filed Motions to Dismiss.[3] (Dkts. 63, 66.) Several weeks later, AAII filed an Answer to the First Amended Complaint, asserting two (2) counterclaims. (Dkt. 94.)

On December 28, 2018, the Court ordered the parties to conduct a settlement conference with the undersigned. (Pl.'s Mem. Supp. at 2.) On January 9, 2019, one day prior to the court-ordered settlement conference, Plaintiff asked AAII's counsel to explain the basis for one of AAII's counterclaims. (*Id.* at 3, Ex. A.) AAII's counsel did not immediately respond to that request. (*Id.*) Following the conclusion of the settlement conference, the undersigned stayed the case for approximately two (2) weeks ("First Stay"), with the stay beginning on January 11, 2019. (Dkt. 113.) The undersigned terminated the stay on January 24, 2019, upon learning that the parties

---

3. LTD would later file a Memorandum in Support of DMB's Motion to Dismiss for Lack of Subject Matter Jurisdiction. (Dkts. 119, 150.)

2

failed to reach a settlement agreement. (Dkt. 122.) During the First Stay, Plaintiff did not pursue any additional actions regarding AAII's refusal to provide factual support for its counterclaims. (Pl.'s Mem. Supp. at 3.) Plaintiff only sent AAII a Rule 11 sanctions letter on January 25, 2019, a day after the First Stay expired. (*Id.* at 3, Ex. B.) The letter detailed AAII's alleged Rule 11 violations and requested that AAII voluntarily dismiss its counterclaims with prejudice. (*Id.*, Ex. B.) Again, AAII did not respond to Plaintiff's request nor did it withdraw the counterclaims. (*Id.*)

On January 31, 2019, Plaintiff filed a Motion to Dismiss AAII's counterclaims. (Dkt. 131.) On February 1, 2019, the Court held a hearing on DMB's Motion to Dismiss, along with several other motions to dismiss. (Dkt. 135.) Several days later, on February 4, 2019, Plaintiff served AAII with a draft of its Rule 11 Motion. (Pl.'s Mem. Supp. at 3.) On February 12, 2019, the parties filed a joint motion to stay the case and amend the Court's scheduling order. (Dkt. 142.) Plaintiff is a signatory to that motion. (*Id.* at 5-6.) The next day, the Court granted the parties' joint motion, ordering that "[a]ll proceedings in this Matter are hereby stayed in all respects except for the Supplemental Briefing requested by the Court" ("Second Stay"). (Dkt. 147 at 1.)

On March 18, 2019, the Court entered an order granting DMP's motion to dismiss and dismissed this matter without prejudice. (Dkt. 161.) Approximately ten (10) days later, Plaintiff filed its Motion for Sanctions. After receiving the parties' briefs, the undersigned cancelled the April 12, 2019, hearing on the motion and prepared this Report and Recommendation.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 11, a litigant presenting a pleading to the court certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the pleading is not presented for an improper purpose, the legal contentions are "warranted by existing law," and the factual allegations are

3

supported by the evidence. Fed. R. Civ. P. 11(b). Rule 11 also authorizes a court to impose sanctions if it determines that a party violated Rule 11. Fed. R. Civ. P. 11(c) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."). Available sanctions include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). In imposing Rule 11 sanctions, a court must describe the sanctioned conduct and explain the basis for imposing the sanction. *See* Fed. R. Civ. P. 11(c)(6).

## IV. ANALYSIS

Plaintiff requests that the Court find AAII violated Rule 11 and award Plaintiff "appropriate sanctions." (Pl.'s Mem. Supp. at 13.) Plaintiff contends that Defendant violated Rule 11 by (1) asserting a breach of contract claim that was barred by the statute of limitations and (2) basing an anticipatory breach of contract claim upon a single conversation with Plaintiff's Associate General Counsel in October 2018. (*Id.* at 5-10.) AAII argues, in part, that Rule 11 sanctions cannot be imposed because Plaintiff did not comply with the safe harbor provision. (AAII Opp'n at 13-15.) The undersigned agrees with AAII.

A threshold issue in any Rule 11 motion is the "safe harbor" provision requiring notice to the offending party and a twenty-one (21) day waiting period prior to the filing of the motion in which a sanction-worthy argument or assertion may be withdrawn or corrected. Rule 11(c)(2) states:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must

>be served under Rule 5, *but it must not be filed or be presented to the court* if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected *within 21 days after service* or within another time the court sets.

Fed. R. Civ. P. 11(c)(2) (emphasis added). "It is clear from the language of [Rule 11] that it imposes mandatory obligations upon the party seeking sanctions, so that failure to comply with the procedural requirements precludes the imposition of the requested sanctions." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004) (en banc) (citations omitted).

Plaintiff did attempt to comply with the safe harbor provision. (Pl.'s Mem. Supp. at 3.) However, because of the various stays entered in this case and the Court's decision to dismiss the entire matter without prejudice, the safe harbor period did not run its course.

A stay is intended to "preserve the status quo." *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020-21 (10th Cir. 1996) (citation omitted); *see also Nken v. Holder*, 556 U.S. 418, 428-30 (2009). A stay, therefore, "suspend[s] judicial alteration of the status quo" and controls the "conduct or progress of litigation before th[e] court." *Nken*, 556 U.S. at 429-30 (alterations in original) (quotations and citations omitted). After considering various factors, including judicial economy and potential prejudice to the nonmovant, courts may stay an entire case or some portion thereof. *See id.* at 428 (noting a stay is defined as "a suspension of the case or some designated proceedings within it" (quotations and citation omitted)); *Pagliara v. Fed Home Loan Mortg. Corp.*, No. 1:16-cv-337 (JCC/JFA), 2016 WL 2343921, at *2 (E.D. Va. May 4, 2016) (listing factors courts consider when deciding a motion to stay). Upon the entrance of an order staying a case, courts will decline to consider other filings, including motions for Rule 11 sanctions. *See, e.g., Phillips v. Mabus*, 319 F.R.D. 36, 40 (D.D.C. 2016) (indicating plaintiffs inappropriately filed a summary judgment motion while the case was stayed); *United States* ex rel. *Superior Steel*

5

*Connectors Corp. v. RK Specialties, Inc.*, Civil Action No. 11-cv-01488-CMA-MEH, 2011 WL 5176157, at *6 (D. Colo. Oct. 31, 2011) (declining to consider Rule 11 sanctions motion while the proceedings remained stayed).

Rule 11's primary purpose is the "deterrence of future litigation abuse." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1374 (4th Cir. 1991) (citing *In re Kuntsler*, 914 F.2d 505, 522-23 (4th Cir. 1990)). One of the tools available to the Court to achieve that deterrence is the imposition of monetary sanctions. Fed. R. Civ. P. 11(c)(4)-(5). But, as noted above, before imposing such sanctions, a court must ensure that various procedural prerequisites have been satisfied, including the twenty-one day safe harbor period. Fed. R. Civ. P. 11(c)(2). The drafters of Rule 11 added the safe harbor provision "in order 'to reduce Rule 11's volume, formalize appropriate due process considerations of sanctions litigation, and diminish the rule's chilling effect.'" *Brickwood*, 369 F.3d at 397 (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997)). Thus, the purpose of the safe harbor period is "namely to allow the offending party twenty-one days to withdraw the offending claims and escape sanctions," *Giganti v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 308-09 (E.D. Va. 2004) (footnote omitted), thereby allowing parties to self-regulate without requiring judicial intervention.

Here, the undersigned finds that imposing Rule 11 sanctions would not comport with the underlying rationale of the safe harbor provision or a court's decision to stay a case. Plaintiff served its motion for Rule 11 sanctions motion on AAII on February 4, 2019. Approximately eight days later, Plaintiff signed onto a motion to essentially stay the entire case. The Court granted that request one day later on February 13, 2019. As a result, no more than nine (9) days of the twenty-one day safe harbor period elapsed before the Court again stayed the case, leaving AAII with nearly two weeks still to decide whether or not to withdraw its counterclaims. Moreover, even if

6

the undersigned were to view Plaintiff's letter to AAII on January 25, 2019, as trigerring the safe harbor provision, AAII would still have approximately two (2) days remaining. *See, e.g., Moore v. Southtrust Corp.*, 392 F. Supp. 2d 724, 736 (E.D. Va. 2005) (finding defendant complied with the safe harbor provision by sending letter putting plaintiff on notice that defendant intended to seek Rule 11 sanctions).[4] Because the safe harbor period did not expire, the Court is prohibited from sanctioning AAII pursuant to Rule 11. Moreover, imposing sanctions prior to the expiration of the twenty-one day period would be demonstrably inequitable in this instance.

Plaintiff argues that the imposition of a stay does not toll the twenty-one day waiting period. (Pl.'s Reply at 3, 5-7.) The undersigned disagrees. In examining the procedural history of the case, it is clear the parties understood that both stays suspended the entirety of the proceedings with a few, narrow exceptions. For instance, Plaintiff did not serve its Rule 11 letter on AAII until after the First Stay expired. Although many factors could have influenced this decision, the timing of the service—the day after the First Stay expired—suggests to the undersigned that Plaintiff declined to send the letter earlier, at least in part, because of the existence of the stay. Additionally, if the stay posed no effect whatsoever on Plaintiff's Rule 11 motion, Plaintiff could have filed the motion on either February 16, 2019 or February 26, 2019, depending on the trigger date. Instead, Plaintiff did not file its Rule 11 motion until March 28, 2019, ten (10) days after the Court dismissed this case; suggesting that Plaintiff understood the Second Stay to apply to its motion.

The undersigned is further convinced that the safe harbor period should toll because Plaintiff, as a party to the joint motion to stay the case, made no mention of the possibility of

---

4. *But see* Fed. R. Civ. P. 11(c)(2) advisory committee's note to 1993 amendment ("To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the 'safe harbor' period *begins to run only upon service of the motion.*" (emphasis added)); *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) ("It would therefore wrench both the language and purpose of the amendment to [Rule 11(c)(1)(A)] to permit an informal warning to substitute for service of a motion."); *Hamlin v. TD Bank*, Civil No. 1:13-cv-00200-MR-DSC, 2014 WL 3101942, at *3 n.2 (W.D.N.C. July 7, 2014) (holding that counsel's "letter threatening to file a motion for Rule 11 sanctions" did not "trigger the safe harbor provision").

7

seeking sanctions when it sought a stay of the case. At the time the motion to stay was filed, Plaintiff was seriously contemplating seeking Rule 11 sanctions as it already had served a letter and a Rule 11 motion on AAII. Therefore, Plaintiff could have asked the Court to carve out sanctions from the stay order. Plaintiff, however, did not make that request. It seems unfair now to demand that AAII should have known or assumed that the Second Stay did not reach or effect the safe harbor period. A stay preserves the status quo. Including the safe harbor provision as part of the status quo appears reasonable and logical as parties often operate on the understanding that unless otherwise specified, a stay suspends a case *in toto*.[5]

Before continuing, the undersigned must note that some courts in this District have held that the imposition of an automatic stay pursuant to § 362 of the Bankruptcy Code does not extend to Rule 11 proceedings. *See, e.g., Sanders v. Farina*, 197 F. Supp. 3d 892, 898-900 (E.D. Va. 2016). In reaching its decision, the court in *Sanders* noted that extending the stay to Rule 11 proceedings "would allow '[a] litigant . . . to delay the imposition of sanctions indefinitely by the expedient of declaring bankruptcy,' which would 'not only increase the number of bankruptcy filings but also create incentives for unprofessional conduct in litigation by . . . individuals teetering on the edge of the bankruptcy abyss.'" *Id.* at 899 (alterations in original) (quoting *Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir. 1993)). The undersigned finds that *Sanders* is highly distinguishable.

Unlike in the bankruptcy scenario, the risk of abuse is far lower. A court must weigh several factors before granting a discretionary stay, including the potential prejudice to the non-moving party. *See Pagliara*, 2016 WL 2343921, at *2. A nonmovant could easily prevail on this prong upon showing that the movant seeks a stay merely to avoid Rule 11 sanctions. Additionally, in

---

5. The undersigned appreciates Plaintiff's argument that the stay clearly did not prohibit parties "from conferring with each other, including in settlement negotiations." (Pl.'s Reply at 5.) However, there is a difference between the parties' independent settlement negotiations and matters more directly before the Court, such as filing deadlines.

contrast to § 362 stays, the district court is in complete control of if and when a stay should be lifted. *Compare Linear Prods., Inc. v. Marotech, Inc.*, 189 F. Supp. 2d 461, 463 (W.D. Va. 2002) ("The decision whether or not to stay a case pending in district court lies within the sound discretion of the court to control its docket, absent a statute removing that discretion." (citations omitted)), *with In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992) ("A decision to lift the automatic stay under section 362 of the Code is within the discretion of the bankruptcy judge." (citation omitted)). Accordingly, the undersigned finds that Plaintiff's fear of rampant, unchecked sanctionable conduct during a stay can easily be dealt with. (Pl.'s Reply at 6.) If an opposing party were to "engage in behavior that violates Rule 11" during a stay, a party could move to lift the stay. Or, even simpler, future parties can guard against this problem by including a carve-out for Rule 11 in its proposed order.[6] The undersigned finds that prior decisions involving the effect of § 362 stays on Rule 11 proceedings does not counsel a different recommendation than the one offered herein.

The undersigned also notes that a court in this district previously held that Rule 11 sanctions could be imposed even though the full twenty-one day safe period had not yet run its course. *See Giganti*, 222 F.R.D. at 306-07. In that case, the court found that the plaintiffs essentially waived their right to the safe harbor provision when "they made clear their intent to forgo" that benefit by continuing to litigate after being served with a Rule 11 sanctions motion. *Id.* at 307. Plaintiff points to several actions taken by AAII since the Court dismissed this case as

---

6. The undersigned must also make two additional points. First, it is not readily apparent to the undersigned how a party could violate Rule 11 while a stay is in place, but then claim the stay immunizes their conduct. Rule 11 involves filings with and representations to the Court. Presumably, if a party takes an action implicating Rule 11, it is because the stay did not extend to that particular action. For example, the stay in this case clearly did not extend to the supplemental briefs filed by LTD and DMB (Dkts. 150, 154) and therefore the stay would have no effect on the safe harbor period as to those filings. Second, a party can still be sanctioned for conduct during a stay without needing to satisfy Rule 11's procedural requirements because Rule 11 "is not the exclusive source for control of improper presentations of claims, defenses, or conditions." Fed. R. Civ. P. 11(d) advisory committee's note to 1993 amendment (listing other sources for sanctions).

evidence that AAII never intended to take advantage of the safe harbor.[7] (Pl.'s Reply at 3; Pl.'s Notice at 1-2.) However, the undersigned also finds *Giganti* distinguishable. The conduct of the litigants in *Giganti* took place under a significantly different factual scenario as the court there never entered a stay, allowing the safe harbor period to run uninterrupted, and therefore is inapplicable in this instance.

Finally, the undersigned must reject Plaintiff's argument that the twenty-day safe harbor period recommenced upon the dismissal of the case. (Pl.'s Reply at 6-7.) It is axiomatic that because "the rule requires that the party submitting the challenged pleading be given an opportunity to withdraw the pleading, sanctions cannot be sought after" the conclusion of the case. *Brickwood*, 369 F.3d at 389 (citing *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 152 (4th Cir. 2002)); *see also Moore*, 392 F. Supp. 2d at 736. Accordingly, a party moving for sanctions must at least serve its Rule 11 sanctions motion on an opposing party at an early enough stage so as to afford the opposing party the entire twenty-one day safe harbor period. *See Brickwood*, 369 F.3d at 389.

Plaintiff correctly points out that district courts retain jurisdiction to decide Rule 11 motions even after a case has been dismissed or remanded. (Pl.'s Mem. Supp. at 12-13.) Nonetheless, the Fourth Circuit's decision in *Barlow v. Colgate Palmolive Co.*, does not abrogate *Brickwood*'s holding that Rule 11 sanctions cannot be sought after a case is dismissed. 772 F.3d 1001, 1009 (4th Cir. 2014) (en banc). As an initial matter, the plaintiffs in *Barlow* never raised a safe harbor defense and, therefore, the Fourth Circuit did not decide this precise issue. *See Barlow*

---

7. Plaintiff references AAII's decision to commence a civil action in Virginia state court based upon the two counterclaims at issue. (Pl.'s Reply at 3.) The undersigned finds AAII's state level activity of no import for purposes of this analysis but notes that state courts are more than capable of policing their own dockets and ensuring litigants comply with pleading requirements. *See United States v. Nabaya*, No. 3:14-cv-835-HEH, 2015 WL 300499, at *2 (E.D. Va. Jan. 22, 2015); *see also* Va. Code § 8.01-271.1.

*v. John Crane-Houdaille, Inc.*, Civil Nos: WDQ-12-1780, WDS-12-1781, 2015 WL 11070882, at *9 n.29 (D. Md. Oct. 8, 2015). Additionally, the Supreme Court decisions relied upon by *Barlow* were decided prior to the 1993 amendments to Rule 11 and do not support the proposition that a party can satisfy the safe harbor provision post dismissal. *See Willy v. Costal Corp.*, 503 U.S. 131, 132-33 (1992) (Rule 11 sanctions motion filed prior to dismissal); *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 389-90 (1990) (same). Moreover, Plaintiff's post-dismissal safe harbor accruement argument has already been rejected by a court in this district. In *Moore*, the defendant complied with the safe harbor provision, but did so only after the Court granted defendant's motion for summary judgment. 392 F. Supp. 2d at 736. The Court recognized that plaintiff's "conduct throughout [the] case [had] been egregious" but declined to find that defendant complied with Rule 11's procedural requirements as the court had "already ruled on plaintiff's Complaint." *Id.* Therefore, post-dismissal days do not count towards the safe harbor period. AAII had nearly two weeks, or at the very least two days, remaining before the safe harbor expired and the ten days in between the dismissal order and Plaintiff's Rule 11 motion do not cure this procedural deficiency.

The undersigned finds that the various stays entered in this case and the Court's dismissal frustrated the proper application of the safe harbor period as to AAII's counterclaims. AAII reasonably understood the stays as preserving the status quo by suspending all deadlines, including the twenty-one day safe harbor period. The Second Stay only came to an end when the Court dismissed the case. Therefore, AAII did not possess the full opportunity to correct or withdraw its counterclaims.

## V. RECOMMENDATION

The undersigned RECOMMENDS that Plaintiff's Motion for Rule 11 Sanctions Against Defendant Advantage Assets II, Inc. (Dkt. 167) be DENIED.

VI. NOTICE

The parties are notified that objections to these proposed findings of fact and recommendations must be filed within 14 days of service of these proposed findings of fact and recommendations in accordance with 28 U.S.C. § 636(b)(1)(C) and a failure to file timely objections waives appellate review of the substance of these proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on these proposed findings of fact and recommendations.

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

_____
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

May 3, 2019
Alexandria, Virginia